<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GAIL E. JOHNSON,<br><br>    Plaintiff,<br><br>v.<br><br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civ. No. 07-3433<br><br><br><u>**O P I N I O N**</u> |

*Appearances:*

AGNES S. WLADYKA, LLC
By: Agnes S. Wladyka, Esq.
1122 Route 22 West
Mountainside, NJ 07092

 *Attorney for Plaintiff*

CHRISTOPHER J. CHRISTIE
UNITED STATES ATTORNEY for the District of New Jersey
By: Karla Joy Gwinn, Esq.
C/O Social Security Administration
Special Assistant U.S. Attorney
26 Federal Plaza, Room 3904
New York, NY  10278

 *Attorney for Defendant*

**<u>DEBEVOISE</u>, Senior District Judge**

Plaintiff, Gail Johnson, pursuant to section 205(g) of the Social Security Act, seeks this Court's review of the Commissioner of Social Security's (the "SSA") final decision that Plaintiff is not entitled to Disability Insurance Benefits (the "Benefits") under sections 216(I) and 223 of the Social Security Act. Plaintiff seeks reversal of the SSA's decision on the grounds that the Administrative Law Judge ("ALJ") erred by improperly evaluating the medical evidence and ignoring substantial medical evidence. For the reasons set forth below, the Commissioner's decision will be reversed and the case remanded for further proceedings.

## I. BACKGROUND

Johnson is a 37 year old woman. (R. at 298.) She has a high school diploma as well as vocational training as an administrative assistant. (R. at 299.) Johnson was employed as an administrative assistant from 1989 until 2000 as well as a food service worker from 1987 until 1994. (R. at 162, 299-301.) Johnson attempted to reenter employment in 2004, but that lasted for only one month. (R.at 299.)

Johnson applied for Benefits on November 6, 2003. (R. at 30-32.) She claimed that she has been disabled since October 1, 2002, due to degenerative disc disease, fractured shoulder, knee surgery, asthma, diabetes mellitus and hypertension. However, the application was denied, as was her request for reconsideration . (R. at 23-28, 132-135.) Johnson then requested a hearing before an Administrative Law Judge. (R. at 295.) The hearing occurred on June 2, 2006, and Johnson appeared before the ALJ represented by an attorney. (R. at 297.) At the hearing, Johnson testified that she had been in constant pain from her shoulder blades, her hips and her left leg for four years. (R. at 301.) She stated that her pain worsens from activities such as bending, squatting, standing and sometimes sitting, and that she cannot stand or sit for more

than an hour. (R. at 302.) She testified that after an hour of activity she has to lie down for several hours. Id. She stated that the pain medications sometimes provide relief and that she experiences dizziness and drowsiness from them. (R. at 303.) Additionally, Johnson testified that she weighed 225 pounds and was five feet six inches tall. (R. at 299.) She had surgery on her right shoulder after she broke her humerus in 2001, had surgery on her left ankle and both knees in 2004. (R. at 303-05.) She further testified that she uses crutches that her doctor prescribed ninety percent of the time. (R. at 305.) On a typical day, she makes breakfast and takes her daughter to school, after which she must lie down. (R. at 307.) She can do laundry, but must sit for the dryer. Id. She goes shopping in her motorized wheelchair with her husband. Id. She cannot bathe the children and does not drive long distances. (R. At 307-08)

    In addition to Johnson's testimony at the hearing, the ALJ considered several medical evaluations, diagnostic tests, and the evaluation of a vocational expert. (R. at 15-22.) Johnson's own treating physician, Dr. Rajapakse, who has been treating Johnson for the past 20 years, (R. at 310.), has been treating examining Johnson once a month to monitor pain patches on her back. (R. at 255.) He has diagnosed her with disc bulging and facet arthropathy. Id. Additionally, the doctor noted that she had constant pain, numbness and tingling from above shoulder blades to tail bone and down her left leg. Id. The doctor assessed that Johnson would be unable to sit, stand or walk for more than two hours, cannot engage in repetitive reaching, handling or fingering, must walk with a assistive device, and can only walk half of a city block without resting. (R. at 257-58.) Further, Dr Rajapakse reported that she is on Vicodin and Skalaktin which causes drowsiness and dizziness. (R. at 256.)

    Additionally, Johnson was examined by Dr. Justin Fernando, a SSA consultive examiner

on May 19, 2005. (R. at 220.) He found that Johnson was in no acute distress, had a normal gait, could not walk on her toes, can squat to only thirty percent of normal, did not use assistive devices during the exam, and was able to rise from her chair without difficulty. (R. at 222.) Dr. Fernando further observed that her cervical spine showed full flexion, extension, lateral flexion and full rotary movement bilaterally, with no evidence of scoliosis or kyphosis or abnormality in the thoracic spine. (R. at 222.) However, Johnson's lumbar spine showed flexion limited at 45 degrees, virtually absent extension, lateral flexion limited to 15 degrees. Id. Her right shoulder was limited at about 100 degrees in forward flexion as well as abduction. (R. at 222-23.) Dr. Fernando did not observe any subluxations, contractures, ankylosis or thickening; however, her sacroiliac joints were tender, particularly on the left side. (R. at 223.) He diagnosed Johnson with degenerative disk disease of the lumbar spine, lumbar radiculopathy, remote history of fracture of the right shoulder, status post open reduction and internal fixation of the right shoulder, asthma, hypertension, diabetes, and obesity. (R. at 223-24.) Finally, Dr. Fernando found that Johnson had a mild limitation for elevation of the right arm over her shoulder and moderate limitation for bending, lifting and carrying. (R. at 224.)

Furthermore, Johnson submitted a number of MRI tests. On September 18, 2002, an MRI of the lumbar spine showed diffuse bulging discs with marginal osteophytes T10-11 through T12-L1, Right lateral disc L1-2, diffuse bulging disc L2-3, facet hypertrophy L3-4, right lateral disc L4-5, facet hypertrophy L4-S1 with subarticular zone and neural foraminal stenosis. (R. at 252-53.) A November 7, 2003, MRI showed disc bulging and facet arthropathy but no evidence of herniation, significant spinal stenosis or cord compression. (R. at 250-51.) Furthermore, on December 21, 2004 the an MRI of the sacrum showed disc bulging and facet arthropathy but no

herniation, significant spinal stenosis or cord compression. (R. at 248-49.) However, an MRI on June 5, 2006, shows evidence of herniation and stenosis in addition to disc bulging. (R. at 280-81.) The test found disc bulging and mild posterior spondylosis at the T11 thru L2 position, an annular tear from diffuse disc bulging and mild posterior spondlyosis at the L2-3 position, mild diffuse disc bulging and mild posterior spondlyosis at the L3-4 position, an annular tear associated with herniation, mild posterior spondlyosis and mild central canal and subarticular zone stenosis at the L4-5 position. Id.

Additionally, the ALJ requested the opinion of a Disability Determination Services examiner ("DDS examiner") on June 3, 2005. (R. at 232-242.) The DDS examiner found that Johnson could stand at least two hours and sit about six hours of an eight hour workday as long as she can alternate standing and sitting. (R. at 233.) In determining that Johnson could accomplish these tasks, the DDS examiner relied on the MRI from December 21, 2004 and Dr. Fernando's evaluation on May 19, 2005. (R. at. 233-34) The DDS examiner also found Johnson only partially credible because of the December 21, 2004 MRI, which showed no signs of herniation, spinal stenosis or cord compression, and what he viewed as inconsistences of chronic pain and her stated activities of daily living, which included shopping in a power wheelchair for up to three hours, sitting at a computer, going to girlscout meetings and preparing meals. (R. at 240.) Additionally, the DDS examiner did not think she was credible because she did not use assistive devices during her exam with Dr. Fernando. Id.

Furthermore, the ALJ consulted a vocational expert. The ALJ described Johnson's limitations as restricted to sedentary work, cannot lift her right hand over head, cannot continuously use right arm for more than one hour, and must alternate standing and sitting. The

vocational expert reviewed Johnson's vocational background and determined that she could no longer work in her former capacity. (R. at 286.) However, he determined that Johnson could work as a sorter, registration clerk or surveillance system monitor. (R. at 287.)

After considering the evidence, the ALJ denied Johnson's request for benefits. (R. at 22.) Johnson timely appealed the ALJ's decision to the Social Security Administration's Appeal Council, who denied Plaintiff's request for review. (R. at 7.) Plaintiff then instituted this action to review the Commissioner's decision.

## II. DISCUSSION

The issue before the Court is whether the ALJ properly evaluated the medical evidence and made his determination based on substantial evidence. Since the ALJ did not consider Johnson's June 5, 2006, MRI, her ankle and knee surgeries, her gross overweight and improperly dismissed Johnson's treating physician's observations, the case must be remanded.

### A. Standard of Review

A district court's review of the SSA's factual conclusions is deferential and limited to determining whether the conclusions are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A district court is bound by the SSA's factual findings that are supported by substantial evidence, even if the district court would have reached a different factual conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

### B. Determination of Disability

Under the Social Security Act, disability insurance benefits are provided to individuals

who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). To constitute a disability, the impairment must be "expected to result in death" or "last for a continuous period of not less than 12 months," § 423(d)(1)(A), and be "of such severity that [the individual] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work," § 423(d)(2)(A).

An ALJ determines whether an individual is disabled and therefore entitled to disability insurance benefits by using a five-step evaluation process. See 20 C.F.R. § 404.1520(a). A finding by the ALJ at any of the steps that the individual is either disabled or not disabled ends the inquiry. The five stages of inquiry proceed as follows.

*Step 1: Substantial Gainful Activity.* The ALJ must first determine whether the claimant is engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(*i*). Substantial gainful activity is work activity that involves doing significant mental or physical activity for pay or profit. 20 C.F.R. § 404.1572. If the ALJ finds that the claimant is engaging in substantial gainful activity, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(*i*).

*Step 2: Severity of Impairment.* If the claimant is not engaged in any substantial gainful activity, the ALJ must then determine the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(*ii*). An impairment is severe when it significantly limits the individual's physical or mental ability to do basic work activities. § 404.1520(c). If the ALJ finds that an individual's impairment is not severe or has not met the 12 month durational requirement, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(*ii*).

*Step 3: Listed Impairments.* If the ALJ determines that the claimant's impairment is

severe, then the ALJ compares the medical evidence of the impairment to a list of impairments in Appendix I of 20 C.F.R. Part 404, Subpart P.  20 C.F.R. § 404.1520(a)(4)(*iii*).  The impairments listed in Appendix I are presumed severe enough to preclude substantial gainful activity.  If the ALJ finds that the individual's impairment is listed in Appendix I and has met the 12 month durational requirement, then the ALJ must find that the claimant is disabled. § 404.1520(a)(4)(*iii*).

    *Step 4: Residual Functional Capacity.*  If, however, the individual's impairment is not listed in Appendix I, then the ALJ must consider whether the claimant possesses the residual functional capacity to do his past relevant work.  20 C.F.R. § 404.1520(a)(4)(*iv*).  Residual functional capacity covers those activities that an individual is still able to do despite the limitations caused by his impairment.  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000).  If the ALJ finds that the individual has the capacity to perform past work, then the ALJ must find that the claimant is not disabled.  § 404.1520(a)(4)(*iv*).

    *Step 5: Adjustment to Other Work.*  If the claimant cannot perform past work, then the ALJ must consider the individual's residual functional capacity, age, education, and work experience to determine whether the claimant can perform other work.  20 C.F.R. § 404.1520(a)(4)(*v*). Other work includes "any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. § 423(d)(2)(A).  If the ALJ finds that the individual has the capacity to adjust to other work, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(*v*).  However, if the ALJ finds that the individual cannot adjust to other work,

then the ALJ must find that the claimant is disabled.  Id.

While the individual claimant bears the burden of persuasion of steps one through four, the burden shifts to the SSA of the fifth step.  At the fifth step, the SSA must prove that the individual is capable of obtaining gainful employment other than his past relevant work and that jobs, which the individual can perform, exist in substantial numbers in the national economy. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

## C.  The SSA's Findings and Conclusions

At the first step of analysis, the ALJ found that Johnson has not engaged in susbstantial gainful activity since October 1, 2002.  (R. at 17.)  At the second step, the ALJ found that Johnson has a back disorder and status post fracture of the right proximal humerous, which are severe impairments.  Id.

However, the ALJ did not find that these impairments meet the listed impairments.  (R. at 17.)  The ALJ determined Johnson did not meet Listing 1.02 for Joint Dysfunction and concluded that it does not meet the listing because Johnson has not lost the ability to ambulate effectively in at least one major peripheral weight-bearing joint and there is no evidence of joint space narrowing, bony destruction or ankylosis.  Id.  Additionally, the ALJ determined that Johnson did not meet Listing 1.04 for back disorders because there is no evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis.  (R. at 18.)  Finally, the ALJ determined that Johnson did not meet Listing 1.07 because the evidence did not show nonunion of a fracture under continuing surgical management directed at restoration of functional use that was not expected to be restored within twelve months of onset.  Id.

During the fourth step of analysis, the ALJ determined that Johnson was unable to

perform any past relevant work. (R. at 20.) This was based on the findings of the vocational expert. Id. However, the ALJ did determine that Johnson was not disabled at the fifth step because he determined there are other occupations which Johnson could engage that exist in significant numbers in the national economy. (R at 21.) Despite Johnson's assertions and Dr. Rajapakse's evaluation that she cannot perform even sedentary work, the ALJ determined that Johnson could perform sedentary work as long as she was able to alternate standing and sitting, not required to put her right arm over her head, and not required to continuously use her right arm. (R. at 18.) Although the ALJ found that Johnson's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," her assertions as to the intensity of the symptoms and her limitations are only partially credible. Id. This determination appears to be based on Dr. Fernando's evaluation as well as the November 7, 2003, and December 21, 2004,[1] which reveal disc bulging in the lumbar spine but no evidence of herniation, significant spinal stenosis or cord compression. (R. at 19.) Additionally, the ALJ considered the DDS examiner's opinion that Johnson could perform sedentary work. Id. Finding that Johnson could perform some types of sedentary work, the ALJ sent an interrogatory to a vocational expert who advised the ALJ that Johnson could work as a sorter, registration clerk or surveillance system monitor. (R. at 21.) Therefore, the ALJ determined that Johnson was not disabled as defined by the Social Security Act. Id.

      The ALJ failed to properly consider all of the medical evidence. He does not mention Johnson's surgeries on her knees or ankles and the June 5, 2006 MRI results, which corroborate

---

[1] The ALJ refers to a February 21, 2004, MRI. However, it appears that he meant to reference the December 21, 2004, MRI.

much of Johnson's assertions.  Additionally, this MRI gives more substantiation to Dr. Rajapakse's evaluation.  Furthermore, the MRI does show evidence of nerve root compression, which may show Johnson meets a listed impairment.  Therefore, the ALJ's decision must be remanded to further develop the record based on all the medical evidence.

      The ALJ did not give proper weight to Dr. Rajapakse's evaluation that Johnson cannot perform even sedentary work.  The opinion of a treating physician should be given substantial weight and the ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence." Morales v. Apfel, 225 F.3d 310, 317-18 (3rd Cir. 2000).  Although Dr. Fernando does not find medical evidence to substantiate the extent of Johnson's pain, he does find an objective basis for those complaints.  This is not contrary to Dr. Rajapakse's evaluation of the record even if it does not offer greater evidence.  Furthermore, Dr. Fernando made his determination without consideration of the June 5, 2006, MRI.  This MRI is evidence of herniation and stenosis in addition to disc bulging.  The ALJ placed a lot of weight on the fact that Johnson did not use her canes during the exam; however, Dr. Fernando did not give his medical opinion that she does not need assistive devices, only that he did not observe the need.  Additionally, the ALJ relies on the DDS examiner's opinion that Johnson is only partially credible.  The DDS examiner makes this assessment in part from MRIs which do not show any compression.  However, the June 5, 2006, MRI, which the ALJ does not even mention in his report, shows a greater degree of back problems than the reports which the DDS examiner relied on.  Furthermore, the DDS examiner never examined Johnson and made his speculation based in part on discounting Johnson's credibility based on what he perceived as a contradiction in her accounts of her activities of daily living.  However, these perceived contradictions should not

have greater weight than her treating physician of over twenty years who attests to her credibility. In this case, no contradictory medical evidence exists to reject the weight that Johnson's treating physician should be accorded. Therefore, the ALJ's determination must be vacated.

Additionally, the ALJ did not properly evaluate whether Johnson qualifies for disability under Listing 1.02 and 1.04. Under Listing 1.02 for dysfunction of joints, the plaintiff must show gross anatomical deformity, chronic pain and stiffness with signs of limitation of motion at one of the major peripheral weight-bearing joints. Although the ALJ flatly rejects both that Johnson is unable to ambulate effectively and that she is has a gross deformity, he appears to ignore all medical records pertaining to her knee and ankle surgeries as well as Dr. Rajapakse's findings that she requires crutches to properly ambulate. Additionally, under Listing 1.04 for back disorders, the ALJ found that Johnson did not have the requisite nerve root compression or spinal stenosis. However, the June 5, 2006, MRI shows evidence of nerve root compression and spinal stenosis. The ALJ failed to consider the effect Johnson's obesity would have upon her Step 3 evaluation. Therefore, upon remand, the ALJ should further determine whether these Listings are met.

Furthermore, the ALJ did not mention how he considered the effects of Johnson's obesity in either the third step or the fifth step of his analysis. Social Security Regulation 02-1p provides that the SSA must consider whether obesity alone or in combination with other impairments meets any of the listed impairments in step three or impacts the petitioner's ability to preform her past work experience or other work. Similarly, the ALJ must consider whether medication affects the plaintiff's ability to work. Schaudeck v. Commissioner, 181 F.3d 429, 434 (3rd Cir. 1999). In this case, the ALJ makes no mention of how either of these two factors affected his

decision.  Johnson weighed 225 pounds (down from her previous 275 pounds) and was five feet six inches tall at the time of the hearing; additionally, she was on pain medication which causes fatigue and dizziness.  Therefore, on remand, the ALJ should also evaluate whether Johnson's obesity and medications further complicates her impairments.

### III. CONCLUSION

For the reasons set forth above, the determination of the Commissioner will be reversed and the case remanded for further proceedings in accordance with this opinion.  This will necessitate, among other things, a reexamination of the ALJ's findings at Step 3 and Step 5.  An appropriate order implementing this opinion will be entered.

   /s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: July 9, 2008